### ROBERTS and Others *v.* MALIN and Others.

Where legacies are made payable *in futuro*, out of personal estate, the general rule is that no interest will be allowed until after the day of payment.

But an exception exists in favor of the minor children of testators, where no provision has been made by the will for their maintenance during their minority.

The exception does not, however, apply where a provision has been made by the will which appears to have been intended for their maintenance.

A trifling provision, temporary in its character, will not be construed to be such a provision for their maintenance, unless the intention that it should be so can be clearly inferred.

Where legacies are charged upon real estate, the rule, with certain modifications, is, that they do not vest, nor, consequently, bear interest, until the time appointed for payment.

A testator devised land to his wife during her widowhood, with remainder to his daughter, and, his wife being pregnant, he directed that if the child should be a female and attain to eighteen years of age, his daughter should be bound to pay the child 100 dollars in cash, out of the tract of land left her. *Held*, that the testator intended merely to charge his daughter with the payment of 100 dollars when the child should arrive at eighteen years of age.

ERROR to the *Switzerland* Circuit Court.

HOVEY, J.—Bill in Chancery. Facts admitted; and an answer waived.

*William Phillips* made his will, and died in 1827, devising, among other things, his homestead in *Switzerland*

county, containing one hundred acres, to his wife, *Mary Phillips*, during her widowhood, &c., with remainder in fee to his daughter *Peggy*. The parts of the will necessary to be stated, are as follows:

" I leave my horse *Dick* for the general support of the family, who may remain with my wife. He is not to be sold, but my wife may exchange him for a younger one.

" All my farming utensils, I leave with my wife, for the joint use of my family, who may remain with her.

" And it is further understood, that my wife is in a state of pregnancy, and should the child live and be a male, and arrive at the age of twenty-one years, or if a female, at the age of eighteen, I direct and make this a part of my will, that my daughter *Peggy* shall be bound to pay the said child 100 dollars in cash, out of the tract of land left said *Peggy*."

The child with which the wife of the testator was pregnant, was born after the death of the testator, named *Ann Maria*, and arrived at the age of eighteen, in *September*, 1845. Previous to her arriving at that age, she was married to *John W. Roberts*, one of the plaintiffs in error, who, with the said *Ann Maria*, on the 6th day of *October*, 1845, legally assigned and transferred said legacy to *Ebenezer Dumont*.

Shortly after the death of the testator, the widow, *Mary Phillips*, married, and gave possession of the homestead to said *Peggy*, and her husband, *Frederick W. Krutz*. The widow died, and *Krutz* and wife, subsequently, but before the commencement of this suit, sold and conveyed the homestead to *Edward F. Krutz, Azariah Wiley*, and *Joseph Malin*, in different portions in severalty; who derive their title to said land, by virtue of and under said will.

The legacy was demanded after *Ann Maria* arrived at eighteen, payment refused, and it remains yet unpaid.

*F. W. Krutz* and wife are both insolvent.

The case was submitted to the Circuit Court at the *October* term, 1846, the parties "agreeing, that the only question in litigation was, whether the legacy to *Ann Maria*

May Term,
1854.

ROBERTS
v.
MALIN.

was to draw interest from its date, or since *September,* 1845."

The Court rendered a decree in favor of *Dumont,* for 106 dollars and 75 cents, charging the land with the payment, &c. The complainants prosecute this writ of error.

Where legacies are made payable *in futuro,* out of personal estate, the general rule is, that no interest will be allowed until after the day of payment, but an exception has been long and well established, in favor of the minor children of testators, where no provision has been made by the will, for their maintenance during their minority. *Mills* v. *Wisler,* 5 Bin. Rep. 479.—*Mitchell* v. *Bower,* 3 Vesey, jr., 287.—*Tyrrel* v. *Tyrrel,* 4 *id.* 4.—*Cricket* v. *Dolby,* 3 *id.* (Sumner's Ed.) with notes, 17.

The reason of this exception is founded in the moral and legal obligation of parents to provide for the necessities of their offspring, and from the presumption that they do not generally intend to leave their children in destitution and want, during the most helpless periods of their infancy.

The counsel for the defendants in error insists, that where any provision is made for the maintenance of the legatee, the exception above stated does not apply, and that interest should not be allowed until after the day of payment. The abstract principle, as stated by him, will, no doubt, be found in elementary works, but we apprehend that nearly, if not all the cases, which gave rise to, and which have sustained it, will be found to turn upon the *intention of the testator.* Any amount, however small, if clearly intended as a provision for maintenance, would destroy the presumption upon which Courts have allowed interest; but to apply this principle to trifling provisions, which are temporary in their character, unless the intention to provide can be clearly inferred, would be doing violence to reason and justice.

The only facts before us, from which a provision for maintenance could possibly be inferred, are those parts of the will which relate to the use of the farming utensils, and the horse *Dick,* and we think we would be stretching

the authorities to an extreme, to decide that such provisions alone could be regarded as a maintenance, or as indicating an intention to provide for a child in *ventre sa mere*, until it should arrive at the age of eighteen.

If placed upon the ground of a provision for maintenance, we should be compelled to decide that no such maintenance is provided for in the will, and allow interest from the death of the testator; but the facts compel us to go further, and distinguish this case from those which are to be paid out of personal estate alone.

Where legacies are charged upon the realty, as in this case, they are to be considered as dispositions of land, and governed by a different rule from the one above laid down. *Reynish* v. *Martin*, 3 Atk. 330.—*Pullen* v. *Ready*, 2 *id.* 587.—*Sheriff* v. *Mortlock*, W. Kelynge 24.

Lord *Hardwicke* held, that no rule was better settled, than that legacies charged on lands do not vest till the time of payment comes. *Harvey* v. *Aston*, 1 Atk. 378, 379. See also *Phipps* v. *Lord Mulgrave*, 3 Vesey, jr., 613. Some modifications to this rule have been since established, which we need not state, as they do not affect the question before us. 1 Jarman on Wills, 755 to 757, and notes.

But independent of the legal presumption as to *when* the legacy vested, we think the will clearly indicates that the testator only intended to charge the land with the payment of 100 dollars, upon the day that *Ann Maria* should arrive at the age of eighteen. The land is devised to *Peggy* in fee, after the expiration of an estate that might, for all the testator knew, continue beyond the time of the payment of the legacy; and it is not reasonable to suppose that he intended she should pay interest for that over which she might not have any control until after the legacy was due. Had *Ann Maria* died before arriving at the age of eighteen, it is clear from the authorities above cited that her representatives would not have been entitled to her legacy, but that it would have fallen back into the land devised to *Peggy*. With this view, we think that interest could only be allowed after *September*, 1845.

May Term,
1854.

*Per Curiam.*—The decree is affirmed with costs.

*E. Dumont,* for the plaintiffs.

*D. Kelso,* for the defendants.